Justice DURHAM,
dissenting:
«[ 214 I agree with almost all of the majority opinion and compliment the author's comprehensive treatment of a complex and challenging case. I cannot agree in the end, however, with the holding affirming the trial court's failure to impute to Ms. Dahl some need for basic living expenses consistent with the parties' lifestyle during the marriage. There is no question that, during their marriage, Dr. and Ms. Dahl enjoyed considerable wealth and made commensurate choices about the material quality of their life. There is also little question, in my mind, that Ms. Dahl, given her age, her health, and her lack of any employment experience for the last twenty years, has little or no significant earning capacity, while Dr. Dahl's capacity for extremely high earnings continues. The record reflects that during their separation, Dr. Dahl voluntarily paid Ms. Dahl over $4,000 per month for her maintenance.
T 215 It is true that Ms. Dahl's testimony about her expenses appears to have been unrealistic and exaggerated, as well as undocumented. Given the overall dismal and inadequate performance of her counsel, however, I believe the district court should have afforded Ms. Dahl some leniency, and acknowledged that all persons have basic needs for housing, food, transportation, medical expenses, clothing, and the like. In these circumstances, an imputation of basic expenses predicated on readfly available information about the cost of living in Utah would probably have yielded an alimony award at least in the vicinity of Dr. Dahl's voluntary temporary payments. And given the parties' historic lifestyle choices, which Dr. Dahl is free to continue, I believe, contrary to the majority's conclusion, that this is a case where the failure to award alimony runs counter to one of the underlying policy justifications of bringing the recipient spouse as near the standard of living enjoyed during the marriage as possible.
1216 The majority sees the question differently, relying exclusively as I understand it, on the 1.5 million dollar award from the marital. estate to Ms. Dahl, and the conclusion that this amount "would enable her to enjoy a very comfortable standard of living." It is true that this amount is a considerable sum, but it is not at all clear to me that Ms. Dahl, who apparently has no income and little prospect of acquiring any, will be able to enjoy anything like the marital standard of living, or the continuing standard enjoyed by Dr. Dahl, as a result of this award. The earnings and capital stemming from this award will need to cover not just Ms. Dahl's current living expenses, but also her retire *619 ment needs. A cursory review of publicly available information reveals that at current interest rates and withdrawal levels that will allow her funds to see her through, Ms. Dahl will be lucky to have fifty to sixty thousand dollars a year on which to live. See, eg., Jeff Sommer, For Retirees, a Million-Dollar Illusion, N.Y. Timgs, June 9, 2018, at BUL (citing a four percent annual withdrawal rate as a "a common, rule-of-thumb drawdown" for a retirement account). For most people, of course, that amount would be more than adequate, but it does not remotely compare with the marital standard of living, or with Mr. Dabl's postdivoree expectations. Thus, in this case, I would hold that the district court abused its discretion in failing to impute basic costs of living even in the absence of compliance by Ms. Dahl's counsel with the (perfectly reasonable) requests of the court. Ms. Dahl's prospects are significantly disproportionate to those of her former spouse, and to the expectations that she should have been entitled to after a longterm marriage conducted in cireumstances of great material comfort.
1217 I also find that the district court applied the wrong legal standard to its determination to deny permanent alimony. The court ruled that "alimony may not be awarded without specific findings of the need of the recipient spouse." I disagree with this conclusion of law. The controlling statute mandates that courts "shall consider" seven enumerated "factors in determining alimony," including "the financial condition and needs of the recipient spouse." Urax Cope § 30-3-5(8)(a); accord Jones v. Jones, 700 P.2d 1072, 1075 (Utah 1985) ("financial conditions and needs" of the recipient spouse "must be considered in fixing a reasonable alimony award"). Although courts certainly must consider the financial need of the recipient spouse, among other mandatory factors, the absence of evidence on any one factor does not require the court to deny an award of alimony. The lack of evidence of need may certainly affect the court's alimony determination, but it is not necessarily dispositive. Because need is a factor relevant to a holistic alimony determination, rather than a required element, I would hold that the district court erred when it ruled that the absence of credible evidence of need required a complete denial of an alimony award.